The Honorable Tim Tedder State Representative, 101st District 2406 East Trail West Road Hutchinson, Kansas 67501
Dear Representative Tedder:
You request our opinion regarding the adoption of recommendations of the Johnson County Charter Commission to consolidate the offices of county clerk and county treasurer under the administrative authority of a county manager and to eliminate the elective offices of county clerk and county treasurer. You raise specific questions concerning the statutory procedures to be followed, and whether the consolidation of the offices of county clerk and county treasurer violates the principles of incompatibility of offices.
Through enactment of K.S.A. 19-2680 et seq., the Kansas Legislature authorized the establishment of a county charter in counties declared by the Legislature to be urban areas. Johnson County is the only county declared an urban area.[1] The county charter statutes permit the Board of County Commissioners of Johnson County to establish a charter commission to study and draft a proposed charter for the government of the County[2] and to submit the proposed charter to the electors of the County for their approval or disapproval.[3]
K.S.A. 19-2680 provides for county charters as follows:
 "Any county which has been declared to be an urban area under the provisions of K.S.A. 19-2654 is hereby authorized to adopt, and from time to time amend, a charter for the government of such county. Such charter shall provide for the exercise of powers of local legislation and administration not inconsistent with general law or the constitution of the state of Kansas, and may:
. . . .
 "(b) provide for the exercise of such powers similar or identical to the powers permitted under K.S.A. 19-101 and article 39 of chapter 12 of the Kansas Statutes Annotated;
. . . .
 "(d) determine the distribution of legislative and administrative duties of the county officials, provide for consolidation or expansion of services as necessary, authorize the appointment of a county administrator or a county manager, and prescribe the general structure of county government; and
 "(e) authorize the appointment of or elimination of elective officials and offices within the charter similar or identical to that authorization permitted the board of county commissioners under article 39 of chapter 12 of the Kansas Statutes Annotated."
The proposed charter submitted by the Johnson County Charter Commission for consideration by the electorate of Johnson County at the general election in November, 2000, contains the following provisions regarding the County Clerk and County Treasurer:
 "Section 5.05. ELECTED COUNTY OFFICIALS. Provisions for the following elected County officials shall be as follows:
 "A. County Clerk: The position of County Clerk shall be appointed, not elected, and the functions and operations of the Office of the County Clerk shall be performed under the administrative authority of the County Manager. The statutory duties of the County Clerk shall be performed by or, as necessary, consolidated under the authority of and as delegated and assigned by the County Manager. Compliance with this provision shall occur when the County Clerk elected in November 2000 leaves office.
. . . .
 "C. County Treasurer: The position of County Treasurer shall be appointed, not elected, and the functions and operations of the Office of the County Treasurer shall be performed under the administrative authority of the County Manager. The statutory duties of the County Treasurer shall be performed by or, as necessary, consolidated under the authority of and as delegated and assigned by the County Manager. Compliance with this provision shall occur when the County Treasurer elected in November 2000 leaves office."
The authority to eliminate elective county offices was the subject of Attorney General Opinions No. 88-5 and 98-33. Attorney General Opinion No. 98-33 specifically addressed the question of consolidating the offices of county treasurer and county clerk. That opinion explored the question of checks and balances between the duties of the clerk and treasurer and concluded that:
 "The elected offices of . . . county treasurer and county clerk can be consolidated into one or more non-elected offices pursuant to K.S.A. 12-3901 et seq. The provisions of K.S.A. 19-302, 19-505 and 19-512 that prohibit the same person from acting as county clerk and county treasurer do not prevent a county commission from consolidating those offices provided the commission complies with all requirements of K.S.A. 12-3901 et seq."
The Governmental Organization Act, K.S.A. 12-3901 et seq., authorizes political and taxing subdivisions of the State to consolidate operations, procedures and functions of offices of the subdivision by following the process set forth in the Act. The proposed charter for Johnson County follows the procedures outlined in K.S.A. 19-2680 et seq. to restructure the offices of county clerk and county treasurer rather than those procedures set forth in K.S.A. 12-3901 et seq. However, inasmuch as subsections (b) and (e) of K.S.A. 19-2680 provide for the exercise of powers similar or identical to the powers permitted under K.S.A. 12-3901et seq., the conclusions of Attorney General Opinion No. 98-33 apply to the consolidation of the offices of county clerk and county treasurer under a county charter pursuant to K.S.A. 19-2680 et seq. Thus, the offices of county clerk and county treasurer may be consolidated into a non-elective position pursuant to the proposed charter for Johnson County.
Your next inquiry concerns the timing of presentment of the question of eliminating the elective offices of county clerk and county treasurer to the voters of Johnson County. Under the Governmental Organization Act, elimination of an elective county office by consolidation requires approval of a majority of the electors of the county voting "in the next regular general election of the county in which the office of governor is elected. . . ."[4] You point out that the proposed charter for Johnson County will be submitted to the electors of the County at the general election in November, 2000.
The statutes concerning the adoption of a county charter require that the proposed charter be submitted to the electors of the county "at the general election next following submission of the final report in which all qualified electors of the county are eligible to vote."[5] The final report of the Johnson County Charter Commission was presented to the Johnson County Board of County Commissioners on May 11, 2000. The November, 2000 election is the next general election following submission of the final report.[6]
The Governmental Organization Act applies generally to all political and taxing subdivisions of the state including counties, townships, cities, school districts, library districts, park districts, water districts, and fire districts. The consolidation proposed in the Johnson County Charter is based on provisions of K.S.A. 19-2680 et seq., which apply specifically to Johnson County. Under principles of statutory construction, general and specific statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears that the Legislature intended to make the general statute controlling.[7] It is significant that K.S.A. 19-2680, as originally enacted in 1975, required that a county charter "provide for the exercise of such powers within the framework of . . . article 39 of chapter 12 of the Kansas Statutes Annotated."[8] It also authorized "the appointment of or elimination of elective officials and offices as provided for by . . . article 39 of chapter 12 of the Kansas Statutes Annotated."[9] The Legislature amended K.S.A. 19-2680 in 1976 to its current form that provides for powers under a charter that are "similar or identical to" the powers granted by K.S.A. 12-3901 et seq., and authorizes the appointment or elimination of elective officials "within the charter."[10]
There is no indication that the Legislature intended that a county organizing under a county charter must follow the provisions of the Governmental Organization Act when the charter contains a provision to consolidate county offices. Rather, the Legislature has specifically authorized the consolidation of county offices within a county charter. Therefore, the proposed charter, including the provisions to consolidate county offices, should be submitted to the voters as required by K.S.A. 1999 Supp. 19-2685, at the general election in November, 2000.
Finally, you indicate that there is no provision in the proposed charter for compliance with K.S.A. 12-3906, which requires approval by a State agency if a consolidation proceeding made pursuant to the Governmental Organization Act affects functions or services over which an officer or agency of the State has constitutional or statutory powers of control. The procedure set forth in the Governmental Organization Act is not being utilized to consolidate county offices under the proposed charter. Rather, the elimination and consolidation of the elective offices of county clerk and county treasurer are proposed within the charter pursuant to statutes authorizing the adoption of a charter for county government. Therefore, the provisions of K.S.A. 12-3906 are inapplicable. However, if the proposed charter is approved by the electors of Johnson County, the County should work with State officials to assure that State functions and services are properly carried out by the County.
In summary, the offices of county clerk and county treasurer may be consolidated into a non-elective position within a county charter pursuant to K.S.A. 19-2680 et seq. The proposed charter for Johnson County, including the provisions to consolidate county offices, should be submitted to the voters as required by K.S.A. 1999 Supp. 19-2685, at the general election in November, 2000. While approval by State agencies affected by the proposed consolidation of county offices under a charter for county government is not required under K.S.A. 19-2680 et seq., if the proposed charter is approved by the electors of Johnson County, the County should work with State officials to assure that State functions and services are properly carried out by the County.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm
[1] K.S.A. 19-2654.
[2] K.S.A. 1999 Supp. 19-2681.
[3] K.S.A. 1999 Supp. 19-2684.
[4] K.S.A. 12-3903(b).
[5] K.S.A. 1999 Supp. 19-2685.
[6] See K.S.A. 25-1115; 25-2502.
[7] Kansas Racing Management, Inc. v. Kansas Racing Commission,244 Kan. 343, 353 (1989).
[8] L. 1975, Ch. 151, § 1.
[9] Id.
[10] L. 1976, Ch. 132, § 1.